MARGIE MILLER *v.* INTER-OCEAN CASUALTY COMPANY

(No. 6928)

Submitted May 12, 1931. Decided May 19, 1931.

*File, Goldsmith & Scherer,* for plaintiff in error.
*Painter & Locke,* for defendant in error.

LIVELY, JUDGE:

Margie Miller obtained a judgment of $1,207.25 against Inter-Ocean Casualty Company on an accident policy issued to J. Byrd Miller, and the Casualty Company prosecutes error.

On December 16, 1928, J. Byrd Miller, the insured, accompanied by two companions, started from Edwight, Raleigh County, in a five passenger sedan automobile. About seven o'clock that evening, which was damp and cold, the car became so mired in the mud that Miller could not drive it farther by the power of the engine. Efforts to pull the car, the chassis of which rested on the ground, out of the mud having failed, it was suggested that the two companions proceed afoot and that Miller remain with the car until the arrival of a team of horses which passersby had agreed to send to pull the car out of the mud; and while waiting, Miller would repair a tire which had blown out. The following morning the lifeless body of Miller was found in the car, the engine of which was running and the windows closed. The tire had not been repaired. The physician who examined Miller's body in the car testified that the deceased, whose lips had a pink color, had a peaceful expression and "not the usual

pallor of death but the—more cherry blush on his cheeks,'' and diagnosed Miller's death as carbon monoxide poisoning. Another doctor found a dark spot on Miller's neck and one on his leg. Plaintiff, wife of decedent, requested payment under an accident policy issued to the deceased, the terms of which, essential on this action, are as follows: Inter-Ocean Casualty Company ''will maintain this policy in force against: The effects of bodily injury caused directly, exclusively and independently of all other causes by external, violent and accidental means, and which bodily injury is sustained by the Insured in (1) Automobile accidents, while operating, driving, riding in or on, * * * an automobile.'' The Casualty Company refused payment, and plaintiff instituted this action. No evidence was offered by defendant who requested, but was denied, a peremptory instruction.

The defense is based upon two contentions, each involving a construction of a portion of the accident policy.

The first error urged by appellant for reversal is that insured ''was not operating his automobile within the meaning of the policy at the time he was affected by the carbon monoxide gas.'' The North Dakota court recently considered a case almost identical with the one at bar and reached, we believe, the correct conclusion. In *Johnson* v. *Life Insurance Co.*, 234 N. W. 661, (N. D., Feb., 1931), the insured, with a companion, drove to Wolford, North Dakota, on April 21, 1928, where they remained until 2 A. M. of the following day. About daylight the car was found standing in a puddle in the road at a point where the road was inundated for some distance. The night had been chilly. The car, equipped with a heater, was out of gear and the motor was running. The insured and his companion were dead, victims of carbon monoxide poisoning. In an action to recover double indemnity, the defense contended that insured's death did not occur while ''riding in or driving'' an automobile, the quoted language being that used in the policy. In deciding the question in favor of the plaintiff, the court stated:

''It is intended, as we read it, to give double indemnity to an insured on account of any loss re-

sulting from personal bodily injury caused by the happening of a purely accidental event while the insured is subject to a hazard incident to riding in or driving a privately owned automobile. To exclude the inhalation of carbon monoxide gas during a period when the car is stalled in a mudhole on the theory that motion had ceased would be not merely to adopt a narrow meaning of the language of the contract, but to actually deprive the words used of a portion of their ordinary meaning. The occupant of a car while it is stalled in a mudhole, particularly during a time when means of escape in comfort may well appear to be lacking, is still riding in the car in quite the same sense as a passenger upon streamship at anchor may be riding the waves.''

The statement in appellant's brief that Miller caused the engine to continue to run to furnish heat to keep him warm is but an inference. No one stated how long the insured had been dead when found. The man who first found the lifeless body testified that Miller ''didn't seem to be'' very cold, but further explained by saying: ''You know there was hot steam in there and the car was hot inside.'' A member of the state police who helped remove the body from the automobile a short time after it was discovered, testified that the body was rigid. Other inferences, equally as plausible as that of defense counsel, are possible under the evidence.

The second ground of defense is that the insured's death did not result from the effects of bodily injury caused by accidental means. The term ''accidental means'' has been variously defined. The federal court discussed it thus in *Association* v. *Smith,* 85 Fed. 401:

''The significance of this word 'accidental' is best perceived by a consideration of the relation of causes to their effects. * * * An effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing under the maxim to which we have adverted (the maxim that

every man must be held to intend that natural and probable consequence of his deeds), is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances.''

See Couch, Cyc. of Insurance Law, Vol. 5, sec. 1137; Cooley's Briefs on Insurance, 2d Ed., Vol. 6, p. 5234. Counsel for defendant urge that Miller voluntarily exposed himself to the danger which caused his death. We cannot approve such an idea. The odorless and tasteless nature of the insidious monoxide gas prevents any intimation that the insured knowingly remained in a place of danger. While it is true that without the engine running, no carbon monoxide would have been produced and so to the extent that he started the car and closed the windows, his acts were voluntary; but without some intervening factor the natural and probable consequences of his acts would have produced no danger. It was that intervening factor—in this case, the proximity of the exhaust pipe to the ground, causing the poisonous gas to come into the car—which produced the unnatural condition and danger —a factor which cannot be attributed to the deceased nor one which occurs or is anticipated in the ordinary course of events under similar circumstances.

The judgment of the lower court is affirmed.

*Affirmed.*