(134 So. 805)

# LIFE & CASUALTY INS. CO. OF TENNESSEE v. TOLLISON.

### 8 Div. 263.

Supreme Court of Alabama.

May 21, 1931.

P. M. Estes and Moreau P. Estes, both of Nashville, Tenn., and R. M. Sims and A. A. Williams, both of Florence, for appellant.

Andrews, Peach & Almon, of Sheffield, for appellee.

**BOULDIN, J.**

The suit is on an accident insurance policy to recover the stipulated benefit for loss of one hand and one foot.

The contract is a limited one known as a "Travel and Pedestrian Policy." Its pertinent provisions appear in the report of the case.

The claim here involved is under the clause extending protection to "truck drivers * * * when engaged in the line of their employment, in actually driving or operating a public conveyance."

The evidence for plaintiff, the insured, tended to show that, while driving a motortruck, a public conveyance, in the line of his employment, on a public highway in the nighttime, and while passing over a public railroad crossing, he discovered the near approach of a train on a curve; that a collision appearing imminent, plaintiff leaped or attempted to leap from the truck. The train struck and demolished the truck. A few moments later nearby parties found plaintiff, probably unconscious or just recovering consciousness, lying by the side of the railroad track with his right foot severed and his left hand crushed so as to require amputation.

The chief controversy in the case arises from his position when found with reference to the point of collision. Measured later from data given by a witness on the ground at the time, this position was eighteen feet from the margin of the traveled highway in the direction from which the train approached, or some twenty-six feet from the supposed position of the truck when struck by the locomotive. Some variance appears in estimated distances by different witnesses; but for the purposes of this decision we accept the above as substantially correct.

The contention of appellant is that this physical fact, established without dispute, or by such preponderance of evidence as to call for a new trial if disregarded, shows the plaintiff had severed his relation as an "actual" driver of the truck at the time of the collision, and his injury could not have resulted from the collision within the meaning of this policy.

█ If the physical facts demonstrate as a certainty that the insured had got out of the truck, abandoned its driving, and by self-controlled movement walked in the direction of the approaching train and was run over, the loss would not be within the coverage of this policy.

The plaintiff disclaims any conscious knowledge of what occurred after he jumped until he recovered consciousness about the time others found him. He cannot and does not say he was still in contact with the truck at the instant of the crash; and hence cannot say he was thrown into a position resulting in the loss of his limbs. An eyewitness testifies he saw him jump as the crash came, cannot say whether he was in the air at the instant, nor whether his actual contact with the truck caused him to be tossed or tripped by the collision. We think the evidence indicates he had cleared the truck, was in the air, or maybe reached the ground at the actual moment of the crash.

Whether it was possible for the impact to cause the truck to throw or knock plaintiff in the direction found we deem unimportant. How he came into that position may be regarded as entirely conjectural. His severed foot was found at another point. His right foot was taken and his left hand. No evidence appears as to what wheels of the passing train cut off or crushed either. Whether he may have scrambled from one position to another after the injury, or after losing one limb does not appear with certainty.

If in truth on seeing an inevitable collision he jumped to save himself, a duty to both himself and the insurance company, and was tripped or stumbled and fell in position to lose his limbs, the loss resulted from a collision while actually driving the truck.

We approve, as of course, the rule that insurance contracts may be and often are made with very limited coverage, the small premium fixed on careful calculation of the hazard assumed; and they should be enforced, not a new or enlarged contract made for the parties.

But this rule runs alongside the further well-known rule that, being framed by the insurer, they are construed favorably to the insured.

Provisions are to receive a reasonable and just construction in the light of both these rules.

The hazard insured against here did not require the driver to remain in the truck, to have the truck actually under his control, nor that the actual crash produce the loss.

The same relation of insurer and insured obtained if he jumped to save himself, but nevertheless failed to save his limbs. The causal relation between the collision and the loss would be the same. We see no reason to disregard the positive testimony tending to show such was this case, because of inability to definitely account for his position when or after his injury was received.

We conclude defendant was not due the affirmative charge, nor to a new trial upon the ground that the verdict was not supported by the evidence.

Dealing with the demurrer to count 3 of the complaint on which the cause was tried, the point is made that it merely avers injury by collision with the truck "which he was driving while engaged in the line of his employment," when the policy says "actually driving."

The policy is set out and made part of the count. The averment imports the same thing as the policy. That he was actually driving the truck until he leaped therefrom is not questioned.

The policy does not stipulate in terms that the collision must occur on a public highway. If appellants' construction that such is its meaning be correct (and this is not to concede such construction), it was sufficient in pleading to follow the terms of the policy in that regard.

Without dispute the collision was at the crossing of a public highway over the railroad tracks.

Technical defects in pleading, not harmful to a party, work no reversal under our rules.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.