Life & Casualty Insurance Company of Tennessee
*v.* De Arman.

4-4095

Opinion delivered January 13, 1936.

*Sydney F. Keeble* and *Cravens, Cravens & Friedman,* for appellant.

*Warner & Warner,* for appellee.

Butler, J.   Earl B. De Arman procured a policy of insurance from the appellant company for a weekly pre-

mium of five cents. The policy provided, among other things, for the payment of the sum of $1,000 in the event the insured should be accidentally killed in the manner set forth and limited by the policy.

The applicable provisions are as follows: ''Or if the insured shall by collision of or any accident to any * * * public automobile, public stage or public bus which is being driven or operated at the time by one regularly employed for that purpose, and inside of which the insured is legally traveling; or by collision of or any accident to any private horse-drawn vehicle or private motor-driven automobile inside of which the insured is riding or driving, or any motor-driven truck inside of which the insured is riding or driving, * * *; provided that in all cases referred to in this paragraph there shall be some external or visible injury on the said vehicle * * * of the collision or accident, provided that an injury to the tire on such vehicle shall not be considered an injury to the vehicle.''

The case was submitted to the court upon an agreed statement of facts, and the court found in favor of, and rendered judgment for, the appellee in the amount named in the policy.

The pertinent facts are that Earl B. De Arman, at a time when the policy was in full force and effect, was killed as a result of bodily injuries occasioned solely by external, violent and accidental means. Appellee was the beneficiary named in the policy. At the time of the fatal injuries, the insured was an employee of England Brothers Truck Line, which was, and is, a duly and lawfully authorized public carrier of livestock and other property by motor vehicles operating in the state of Arkansas, and, at the time of his death, the insured was acting in line of his duty. He, with a fellow-servant, was engaged in operating a 1½-ton Chevrolet truck equipped with a body suitable and of the usual type for transporting livestock. In operating the truck when loaded with livestock, two employees were required, who alternated in driving the truck and attending to the animals loaded therein. The truck had a runway or extension on the out-

side of the body which extended along either side thereof level with the floor. This was the means provided for tending the animals loaded in the truck. Upon this extension the employee tending the stock could walk or stand while the truck was in motion.

On October 25, 1934, the truck was loaded with eleven head of horses and mules which were being transported from Oklahoma to Dermott, Arkansas, for delivery. All of the animals loaded in said truck were tied to stakes in the sides of the body by halter ropes with their heads alternately extending outward toward the outside of the body on each side of the truck. The insured was required to use said runway while the truck was moving, in the discharge of his duty with respect to the animals, and was so using the runway at the time he was fatally injured.

At a time when insured's fellow-servant was driving the truck one of the mules started a disturbance, and it became necessary for the insured to get out on the runway to attend to him. The truck was being driven at a slow rate of speed and was stopped while the insured got out on the runway to quiet the mule. While the insured was thus engaged, the truck was again started, and it passed under the limb of a tree extending partially over the highway. As the truck was passing under this limb the head of one of the mules came in contact with it, cutting a gash in the mule's head, and causing it to break the halter by which it was fastened to the side of the body of the truck. This occasioned a disturbance and shifting of the load within the body of the truck which resulted in the insured's falling or being thrown from the truck and killed.

There was no collision of any part of the truck with the limb of the tree or any external or visible injury on said truck of collision or accident thereto, but immediately after the accident one end of the halter rope which was broken was found tied to the body of the truck, the other end remaining upon the mule which had received the cut, and some of the hair from the mule's head was stuck to the limb of the tree.

14

It is the contention of the appellant that from this state of facts it appears that there was no collision of, or accident to, the truck, nor was there any external or visible injury on the truck as required by the provisions of the policy; that for this reason appellant is not liable for the accidental death of the insured. It is the theory of appellee that, notwithstanding certain clauses of the policy providing for a strict and literal construction, the policy should be liberally construed under settled doctrines of this court, and that, when so interpreted, the facts are sufficient to establish an accident to the truck and a visible mark thereof on it. For authority for this construction, reliance is placed on the cases of *Great American Casualty Co.* v. *Williams,* 177 Ark. 87, 7 S. W. (2d) 775; *Gilbert* v. *Life & Casualty Ins. Co.,* 185 Ark. 256, 46 S. W. (2d) 807; *Travelers' Protective Ass'n* v. *Stephens,* 185 Ark. 660, 49 S. W. (2d) 364; *Washington Fidelity Nat. Ins. Co.* v. *Anderson,* 187 Ark. 974, 63 S. W. (2d) 535.

In the case first cited the policy involved indemnified the insured for accidental injury "while actively engaged in farming by actual contact with, and while operating * * * a binding machine." At the time of the injury the insured was repairing or readjusting a binding machine, and while so engaged a hammer, which was carried on the machine to be used in making repairs, fell upon the insured's foot, resulting in the injury. The court found that, as the repair of the machine was a necessary part of its operation and the hammer was an instrument necessary for purpose of repair, the insured, within the meaning of the policy, was engaged in the operation of the machine at the time of his accidental injury.

In *Glibert* v. *Insurance Co., supra,* upon which case appellee places the greatest reliance, an injury was accidentally suffered by the insured which was occasioned by the slipping of a cable fastened at one end to a tractor and looped around a stump at the other. When this cable was drawn taut by the tractor, the loop slipped from the stump, causing the cable to whip violently to one side, striking and killing the insured. The policy insured

against accident resulting from the striking of the insured by a "vehicle propelled by steam, cable, electricity, * * * gasoline, etc." The court held that the cable attached to the tractor was to be considered as a part of it, and that the injury came within the coverage of the policy, just as if the insured had been run over by the wheels of the tractor or had come in collision with any other part of it.

In *Travelers' Protective Ass'n* v. *Stephens, supra,* there was testimony to the effect that the insured was accidentally cut while acting as a peacemaker. The court submitted to the jury, on conflicting testimony, the question of whether or not the injury received was an accident for which the insurer would be liable under the provisions of a policy insuring against injury occasioned by external, violent and accidental means.

In *Washington Fidelity Nat. Ins. Co.* v. *Anderson, supra,* the policy involved provided for liability of the insurer on two contingencies; (a) where the injury produced total, immediate and continuous disability from the date of the accident, and (b) where the injury would make a visible contusion or wound on the exterior of the body. The insured suffered ptomaine poisoning which immediately and totally disabled him and resulted in his death a short time thereafter. The court held that the insurer was liable, as these facts brought the case within the contingency first mentioned.

We have reviewed these decisions because of the earnest insistence, supported by able argument of counsel for the appellee, that these cases are authority for the position that the blow to the mule's head constituted a collision of, or an accident to, the truck, and that the fact that the tie rope was broken, one end remaining fastened to the side of the body of the truck, was sufficient to establish an "external or visible injury on the said vehicle * * * of the collision or accident." We give to the policy a liberal construction, but we are not justified thereby in giving to the language of the contract any but its natural meaning and the interpretation which the ordinary person would put upon it. It is doubtful whether

the cases relied on justify the contention made by appellee.

In order to establish liability, however, there must be, not only a collision of, or accident to, the truck and an external or visible injury thereon, but the accident, according to the plain and unequivocal language of the contract, must have occurred at a time when the insured was inside of the vehicle riding or driving.

Appellee cites us to a number of cases where the courts have held that one injured while on the running-board of an automobile or other motor vehicle was ''riding in'' such vehicles within the meaning of policies insuring against accident to the vehicle ''in which the insured is riding or driving.'' Other cases are cited which define the word ''in'' as equivalent to the word ''on'' and fix liability under policies providing for liability for accident while the insured is riding ''in'' a vehicle when in fact he is riding ''on'' it. Still other cases are cited where the policy insured against accident while riding *in* a passenger car and the insurer was held liable for an accident while the insured was temporarily on the platform for a necessary purpose. In none of these cases, however, as suggested by counsel for appellant, is the phrase ''inside of which'' synonymous to ''outside of which.'' So far as our investigation extends ''inside'' has never been held to mean ''outside.'' In *New Amsterdam Cas. Co.* v. *Rust,* 164 Tenn. 22, 46 S. W. (2d) 70, the policy limited liability for accident while the insured was ''actually riding in an automobile.'' The court held that the use of the word ''actually'' meant ''in fact'' and added strength to the idea that the insured must have been inside the automobile at the time of injury in order for liability to attach.

So in the case at bar the insurer was not content with the preposition ''in,'' but used the more emphatic word ''inside,'' which, in its ordinary meaning, is the opposite of ''outside.'' Words and phrases used in insurance policies should be construed by their meaning as used in the ordinary speech of the people. *Martin* v. *Mutual Life Ins. Co.,* 189 Ark. 291, 71 S. W. (2d) 694. It is a matter of

common knowledge that standing on the running-board of a car or truck while it is in motion is more than ordinarily dangerous, and, when the emphatic word "inside" is used, it certainly can mean nothing else but that the insured must be inside the car or truck, in the place ordinarily occupied driving or riding therein. Such was the conclusion of the court in *Morris* v. *Peyton,* 148 Va. 812, 139 S. E. 500, and such is the weight of authority. 5 Couch, Cyclo. of Ins. Law, p. 4045. We recognize that in all proper cases the language of insurance contracts should be so construed as to fix liability for injuries arising from accidents, but, as is said in *Mitchell* v. *German Comm., etc., Co.,* 179 Mo. App. 1, 161 S. W. 362, we are not authorized to lay violent hands upon and distort the plain and obvious English in which a contract is written so as to include a risk clearly excluded by the insurance contract.

There are other questions presented which we need not discuss, as it follows, from the construction we have placed upon the contract, that the judgment of the trial court must be reversed, and the case dismissed. It is so ordered.

JOHNSON, C. J., dissents.