## Independence Ins. Co. v. Blanford's Adm'x.

Feb. 7, 1939.

L. H. HILTON for appellant.

WILLIAM ALPHA HUBBARD for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

Beulah Blanford, administratrix of the estate of Bernard Blanford, deceased, has recovered judgment against the Independence Insurance Company for the sum of $3,750 and the latter is appealing.

The action is on a travel and pedestrian accident policy originally issued by the Inter-Southern Life Insurance Company to Bernard Blanford through an arrangement with the Courier-Journal, which was later assumed or reinsured by appellant and which among other things insured him "against death or disability resulting directly, independently and exclusively of all other causes from bodily injuries effected solely through external, violent and accidental means and sustained by the insured in the manner following:

"Part Two. (A) By the wrecking or disable-

ment of any automobile or motor driven car (Motorcycles and Railway Cycle Cars Excepted) or horse-drawn vehicle not plying for public hire in which the insured is riding or driving or by being accidentally thrown from such wrecked or disabled automobile or vehicle.''

On the night of January 22, 1936, watchmen on a steamboat saw an automobile go over an embankment at the foot of 26th street in Louisville and stop about half way between the top of the embankment and the edge or wall of the Portland canal. They saw headlights but on account of darkness and possibly fog could only make out the bulk of the automobile. After the automobile came to rest the headlights continued to burn. They called but received no response and after several minutes had elapsed one of the watchmen went to a telephone and notified the police department. In response to the call five police officers went to the scene. They found the automobile standing practically parallel with the canal with the right hand door which was next to the canal open and the back of the seat nearest the door tilted forward. The motor was still running although the ignition key had been removed. They found a driver's license attached to the shaft of the steering wheel and a man's hat on the ground a few feet from the automobile and between it and the canal. The night was extremely cold, with a temperature of six to eight degrees below zero and the ground at least partially covered with snow. They discovered tracks leading from the automobile toward the canal. Some of the officers took the driver's license and the hat which they found to the home of Bernard Blanford where they were identified by his wife, Mrs. Beulah Blanford, as belonging to him. The officers testified that they made a careful inspection of the automobile and surroundings with strong flashlights and a searchlight attached to an automobile on the top of the bank. Friends and relatives of deceased who went to the scene the following morning testified that they discovered what appeared to be drops of blood in the automobile and also on the ground from it to the canal. The officers who inspected the automobile the night of the accident and some of whom returned the following morning and made further inspection testified that they found no evidence of blood in the automobile or anywhere on the ground thereabouts. According to the evidence the automobile on

leaving the street went over a very steep bank six to eight feet high and then across a short terrace or somewhat level space and over another steep embankment and then turned west and came to a stop on a sloping space. As we understand from the evidence there was still another steep embankment between the automobile and the canal with a sloping or level space between the last embankment and the concrete canal wall which was over 20 feet in width. The place where the automobile stopped was approximately 53 feet from the wall of the canal. There were deep furrows or ruts cut by the wheels of the automobile in the embankment where it left the street and one rear fender had been bent by coming in contact with the ground and dirt on the differential indicated that it had dragged on the ground in going over the first embankment.

On April 16, 1936, the body of Bernard Blanford was found floating in the canal a short distance below 21st Street but it was so swollen and discolored that it was impossible to determine whether there were or had been any bruises or other external evidences of injury.

Appellee alleged in effect that insured lost his life by the wrecking or disablement of the automobile in which he was riding, being accidentally thrown therefrom and therefore appellant was liable under the quoted provisions of the policy. Appellant traversed the material allegations of the petition and also set up some affirmative defenses. However, for reasons presently appearing it will be unnecessary to consider any issue except that made by the traverse.

Under the quoted provision of the policy the burden was upon appellant to establish at least prima facie that the automobile was wrecked or disabled and that insured's death was a proximate result of such wrecking or disablement or of his being accidentally thrown from the car when it was so wrecked or disabled. This and other courts have consistently held that to bring a case within the coverage or protection of the quoted or similar provisions of a policy it is necessary to show causal relation between the wrecking or disablement of the car and injury or death of insured as the case may be.

The car was towed from the place where it stopped after going over the embankment to the home of deceased, but was later driven by its own power a consid-

erable distance to a garage and the evidence shows that it was necessary to replace or repair some damaged parts before it could be efficiently operated.

For the purposes of this case we may assume that the car was "wrecked" or "disabled" as those terms are used in the policy and as interpreted or defined in Lutz's Adm'r v. Inter-Southern Life Insurance Company, 236 Ky. 339, 33 S. W. (2d) 20; Federal Union Life Insurance Company v. Richey's Adm'x, 256 Ky. 262, 75 S. W. (2d) 767; Federal Life Insurance Company v. Sivels, 256 Ky. 520, 76 S. W. (2d) 608, and other domestic cases.

It is argued on behalf of appellant in effect that appellee wholly failed to meet the burden of proof as above indicated and therefore its motion for a peremptory instruction should have been sustained, and that instructions given were erroneous. On the other hand it is argued in brief by counsel for appellee that the evidence establishes as alleged that "the death of Bernard Blanford was brought about by being thrown from the wrecked or disabled automobile."

In Guaranty Trust Company v. Continental Life Insurance Company, 159 Wash. 683, 294 P. 585, it was held in effect that the words "thrown from" an automobile as used in a policy of this character means tossed or hurled out of the car by some force.

From our recitation of the substance of the evidence it will be seen that there is no substantial evidence, direct or circumstantial, that insured was accidentally thrown from the car, or that would furnish a reasonable basis for an inference that he was. There was nothing in the condition in which the car was found or on the ground to so indicate.

The back of the right front seat was tilted forward as though to permit one in the rear to alight. This was next to the open door and would have prevented one occupying the driver's seat from being thrown out that door. There was no mark or evidence on the ground that the body of insured came in violent contact with it. On the other hand, the tracks found indicated that the occupant of the car alighted from it after it stopped. Any argument that insured was thrown from the car into the canal finds no support in evidence and is at variance with well known natural laws. It was about 53 feet from

.where it stopped to the canal wall and a part of the in-tervening space was only slightly sloping. If the car had swerved to the left with enough force to have thrown the body of a man into the canal it would have overturned, since there was considerable slope toward the canal at that point; and the evidence of some witnesses for appellee indicates that because of the lay of the land the car was leaning so much to the right that little force would have caused it to topple over.

Construing the evidence most favorably to appellee as it is our duty to do in disposing of the first ground argued for reversal, we find nothing but sheer surmise and conjecture as foundation for a conclusion that insured was thrown from the car, while on the other hand the proven facts and circumstances clearly indicate that he was not.

In North American Accident Insurance Company v. West, 245 Ky. 316, 53 S. W. (2d) 692, it is said in substance that suspicion, conjecture or surmise is not sufficient to constitute evidence that would authorize the submission of a case to a jury. While the facts in that case are in many respects materially different from the facts in this case, the rule announced and the authorities cited have equal application here.

It is our conclusion that appellant's motion for a peremptory instruction should have been sustained and this renders it unnecessary to discuss the second ground.

Judgment reversed for proceedings consistent with this opinion.