# Hunt v. Life & Casualty Ins. Co. Of Tennessee.

### September 26, 1947.

Robert M. Coleman, Judge.

Rodes K. Myers and Joe S. Garman for appellant.

G. D. Milliken, Sr., and G. D. Milliken, Jr. for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

Appellant, Mary Ruth Hunt, sued on a contract of insurance, issued by appellee to her husband, James O. Hunt, deceased. She alleged that assured was operating a motor truck bus in the line of his employment; that an accident occurred wherein he received injuries, as a result of which he died; that proof of death was filed with the appellee, defendant below, and that the defendant refused to pay the claimant. General denial was made of the affirmative allegations in the petition. The cause came on for trial and upon conclusion of the testimony for plaintiff a verdict was directed in favor of the defendant. The plaintiff appeals insisting the court was in error in so directing a verdict.

Appellant takes the position that the question of facts as to whether or not assured met his death from natural or accidental causes was the only issue. This position is partially well founded. Yet, it must be kept in mind that this action was brought on a contract of insurance which insured against ''the result of bodily injury received during the time this policy is in force, and effected solely by external, violent and accidental means.'' It will be observed that the policy further provides that the injury must result from accidental means strictly in a manner stated in the policy, and subject to certain provisions and limitations contained therein in substance as follows: That the insured shall be struck by actually coming in physical contact with the vehicle itself while the insured is walking or standing on a public highway, or be struck by certain vehicles named in the policy while riding a bicycle on a public highway, or by collision of, or any accident to public conveyances which

are being driven or operated by regular employees for that purpose, and in which the insured is a legally traveling passenger, or by collision or accident to "any private horse drawn vehicle, private motor driven vehicle, or motor driven truck inside of which the insured was riding or driving," provided also that there was some disablement or some "external or visible injury to and on the said vehicle" in which the insured received the injuries.

There is no element of deception or ground for misunderstanding in or under the provisions as set out in the policy. It will, therefore, be noted that in making a prima facie case under the above, it became incumbent upon the plaintiff to show that the accident in which the injuries were received by the insured was within the stipulations and provisions as set forth in the contract of insurance.

The deceased's wife testified that he was well when he left home about 9:30 in the morning, and that he was employed, and had been for some few months, by the Fuqua Bus Line, but nowhere does she say that he operated a bus or was on a bus on this particular day.

The deceased's brother, who lived in Auburn, testified that he came to Bowling Green after he heard his brother was dead, and that after some little time he went to the undertaking establishment where he viewed the body of his dead brother. He stated that there was a scratch on his deceased brother's finger and a bruise over his right eye, and a cut on the left eye. He testified that he went to the scene of the accident. He did not, however, specify which accident, or that his brother was in an accident. He stated that he saw some tracks leading off of the highway, but nowhere did he connect his brother with any accident, or as being on a bus, or in any other vehicle.

The undertaker testified about scratches and bruises but in no way did he undertake to connect them with an accident.

The mother of the deceased testified that she had not heard any complaint on his part indicating anything wrong with his lungs or heart.

Mr. Howlett testified that he had known the deceased

during his lifetime; that he worked with him for a number of years prior to his coming to Bowling Green; and that he never heard him complain any more than ordinary fellows complain.

Dr. Newman was asked a hypothetical question as to whether or not the bruises and scratches, as described, evidenced that there might have been such force through a blow to the head to have caused concussion or possible fracture of the skull. This is the sum total of the testimony.

Appellant contends the evidence shows conclusively that Hunt had not been sick since a small boy, at which time he had pneumonia; that Hunt made no complaints to his family, friends, or employer indicative of sickness or disability; that he spent the night with his wife and left home the next morning in good spirits and in good physical condition; and that the medical testimony, although there was no X-ray made, nor autopsy held, brought within the realm of possibility that there was a concussion and perhaps a fracture of the skull, which caused a hemorrhage and resulted in his death. Possibly this contention is true, but nowhere in the above is there an established, or even a contended causal relationship between the accident and the death of the insured. It was incumbent upon the plaintiff to show such causal relation. See Independence Insurance Company v. Blanford's Adm'x, 276 Ky. 692, 125 S. W. 2d 249; National Life & Accident Insurance Company v. Kendall, and Dixie Atlas Republic Ins. Co. v. Kendall, 248 Ky. 768, 59 S. W. 2d 1009; and North American Accident Insurance Company v. White, 258 Ky. 513, 80 S. W. 2d 577.

Appellant says in his brief as follows:

"That on his return trip with the bus of the Fuqua Bus Lines, the driver, Hunt, due to some cause, a defect in steering or something, lost control of the bus. The bus crossed a ditch then ran into a wire fence, knocked down three fence posts some 5 to 6 feet apart, and then traveled a distance of some 20 to 25 feet until it struck a tree.

"That Hunt was found in the bus slumped over with a bruise over his right eye about the size of the

steering gear knob on the bus and a cut on the left eye and a cut on the middle finger of his left hand. He was dead when the first person arrived at the bus.''

We have carefully read, re-read and checked all of the evidence and there is nothing in this record to show that the deceased, Hunt, was operating a bus, or that the bus on which he may have been riding had a wreck, or that Hunt was slumped over, or that he was dead when the first person arrived at the bus. Such evidence is significantly absent. It will readily be observed that there was no evidence to show that the injuries of the insured were the proximate result of an automobile collision, or that the insured was a passenger on a public conveyance, or that he was driving or riding in any motor driven automobile or truck. Nor was there any evidence whatsoever that there was any external or visible injury to the vehicle which the insured was alleged to have been driving at the time of the alleged accident.

There was no alternative on the part of the court below other than to do as was done.

The judgment is affirmed.