BENEFIT ASSN. OF RAILWAY EMPLOYEES *v.* FRANCE.

5-1460                           310 S. W. 2d 225

Opinion delivered February 24, 1958.

*Bethell & Pearce* and *Lawson Cloninger,* for appellant.

*Robert R. Cress, Tulsa, Okla.,* and *Theron Agee,* for appellee.

SAM ROBINSON, Associate Justice. Appellee, Otis France, filed this suit against appellant, Benefit Association of Railway Employees, to recover on a policy of accident and health insurance. There was a judgment for France, and the insurance company has appealed. For reversal appellant argues three points, namely, (1) failure of the insured to give proper notice of the alleged injury, (2) insufficiency of the evidence to prove total disability continuously within ten days of the accident and (3) that the action was filed prematurely.

The policyholder was a railway brakeman. On the night of the 23rd day of February, 1955, he was riding in the cupola of the caboose attached to a freight train, when the train collided with a truck heavily loaded with oil. Immediately following the collision, appellee went to the hospital in an ambulance along with the fireman, who had been injured in the wreck, and appellee claims that at that time he had his head dressed for injuries he received. He returned to work the next day and reported for work with considerable regularity until the 19th of April, at which time he went to a hospital and later notified the insurance company that he had been injured in the train wreck of February 23rd. The insurance company accepted his proof of loss, although it contends that it was paying him indemnity for disability due to tick fever rather than any injuries received, and paid the insured indemnity at the rate of $80 per month for a period of six months, which is the limitation provided by the policy for liability of the company for disability due to illness. The insured filed suit, alleging that he was totally disabled due to accidental injuries within the meaning of the policy from the time of the train wreck; that he was still totally disabled by reason of his alleged injuries, and that the insurance company is indebted to him for indemnity at the rate of $80 per month during the total time of such disability.

The policy provides: (Part IV, Section (a)) "When 'such injury' shall, independently of any and all other

causes, within ten (10) days of the happening of the accident, totally and continuously disable the Insured and prevent the Insured from performing any and every kind of work or occupation for wages or profit, the Association will pay for actual loss of time from the date of first medical treatment, while so disabled, for the period of such continuous total disability, not exceeding twenty-four (24) consecutive months, Accidental Indemnity at the rate per month specified in Part I.''

(Part IV, Section (b)) ''Or, if 'such injury' shall not within ten (10) days from the date of the accident wholly disable the Insured, but shall within Ninety (90) days thereafter wholly disable him, or shall, commencing on the date of the accident or immediately following total loss of time, prevent him from performing a substantial part of the duties of his occupation, the Association will pay for such period of continuous partial disability or such delayed total disability at the rate of one-half (1/2) the monthly Accident Indemnity, not exceeding three (3) months.''

The first point to be considered is whether there is substantial evidence to support the jury verdict that the insured was totally disabled continuously within ten days of the time the injuries occurred. This was a question of fact to be resolved by the jury. *Pacific Mutual Life Ins. Co.* v. *Dupins,* 188 Ark. 450, 66 S. W. 2d 284. If there is any substantial evidence to sustain the jury verdict, it must be affirmed, and the evidence must be viewed in the light most favorable to the appellee. *Pate* v. *Fears,* 223 Ark. 365, 265 S. W. 2d 954.

Appellee testified that although he returned to work the day following the collision he did so because he had to support his family; that he was suffering great pain, and others assisted him with his work, and that he could do no physical work such as the job required. It was shown that during the whole time he attempted to work he suffered pain and that he was actually unable to do the work required by his job, and that other members of the train crew assisted him and

relieved him from doing the heavy lifting required by the job in unloading freight, etc. The evidence is convincing that when the insured went to the hospital along in April he had a ruptured intervertebral disk and that this condition was caused by the train wreck of February 23rd. The appellee had worked for the railroad company for years and had carried his policy with the insurance company since 1949. There is absolutely no evidence that he had suffered with any back trouble whatever prior to the train wreck of February 23rd. Moreover, it is undisputed that he now has a ruptured disk; that he had the ruptured disk when he was examined in April; and expert testimony was introduced to the effect that the nature of the injuries he received in the train wreck was sufficient to cause a ruptured disk.

In reaching a conclusion as to whether there is substantial evidence of total disability during the first ten days following the injuries, we must consider the meaning of the term "total disability" in a policy of accident and health insurance. In *Aetna Life Ins. Co. and Pacific Mutual Life Ins. Co.* v. *Orr,* 205 Ark. 566, 169 S. W. 2d 651, it is pointed out that an injury which might totally incapacitate a person engaged in one occupation might not totally disable another person engaged in a different occupation. And the court quotes from *Aetna Life Ins. Co.* v. *Spencer,* 182 Ark. 496, 500, 32 S. W. 2d 310: " 'Total disability is generally regarded as a relative matter which depends largely upon the occupation and employment in which the party insured is engaged. This court has held that provisions in insurance policies for indemnity in case the insured is totally disabled from prosecuting his business do not require that he shall be absolutely helpless, but such a disability is meant which renders him unable to perform all the substantial and material acts of his business or the execution of them in the usual and customary way'."

Among the cases relied on by appellant is *Southern Surety Co.* v. *Penzel,* 164 Ark. 365, 261 S. W. 920. There the insured developed blood poisoning three days after receiving an injury. The court points out that blood

poisoning is caused by a foreign substance entering the blood and the time when it develops would depend both upon the condition of the blood and the nature of the foreign substance entering it. There was no showing that the insured suffered any disability whatever during the first three days, whereas in the case at bar there is substantial evidence that the insured was totally disabled within the meaning of the policy of insurance immediately following the collision, and that such a disability continued thereafter. And in *Lyle* v. *Reliance Life Ins. Co.*, 197 Ark. 737, 124 S. W. 2d 958, it was held that the insured did not make out a case of total disability when he continued to work at his regular job, without the aid of others, to the satisfaction of his employer. Here it is shown that the insured was able to continue his employment only with the aid of his fellow employees.

In *Mutual Life Ins. Co. of N. Y.* v. *Dowdle,* 189 Ark. 296, 302, 71 S. W. 2d 691, it is said: "One is ordinarily able to perform the duties of his employment, or he is unable to do so; and the fact that indulgent relatives might continue compensation for partial performance is not the final test of capacity, but is only a circumstance to be considered along with all other testimony. Nor does the law require one to perform duties at the peril of his life or health, nor to perform them if their performance entails pain and suffering which a person of ordinary prudence and fortitude would be unwilling and unable to endure."

In *Pacific Mutual Life Ins. Co.* v. *Dupins,* 188 Ark. 450, 454, 66 S. W. 2d 284, the insurance company contended that the insured was not totally disabled prior to July 15, 1931, because up to that time he was engaged in light work in railroad shops. The court said: "* * * This is not a conclusive test of total and permanent disability, as has many times been held by this court." And the court quotes from *Industrial Mutual Ind. Co.* v. *Hawkins,* 94 Ark. 417, 127 S. W. 457, as follows: " 'Total disability exists, although the insured is able to perform occasional acts, if he is unable

to do any substantial portion of the work connected with his occupation'.''

The court further said (in the *Dupins* case): ''Again we held in *Mutual Benefit H. & A. Association* v. *Bird,* 185 Ark. 445, 47 S. W. 2d 812, that, although the insured endeavored to do some work, this was not the exclusive test to be applied. The true test seems to be that total disability exists where the injuries are of such character and degree as to wholly disable the insured from doing all the substantial and material acts necessary to be done in the prosecution of his business, and when common care and prudence would require a man in his condition to desist from the kind of labor he had performed prior to his injury. When the rule is thus stated and analyzed, it will be seen that the mere fact that the insured performs certain labor, when common care and prudence require otherwise, does not of itself demonstrate a lack of total disability. This exact question was again before this court in *Missouri State Life Ins. Co.* v. *Johnson,* 186 Ark. 522, 54 S. W. 2d 407, wherein the doctrine, as heretofore stated, was reannounced and approved.''

In *Occidental Life Ins. Co. of Calif.* v. *Sammons,* 224 Ark. 31, 33, 271 S. W. 2d 922, 923, the policy had a clause providing that indemnity would be paid only ''if the insured is absolutely unable to leave the house and yard''. The insured filed suit, alleging he was disabled within the meaning of the policy. It was shown by stipulations and testimony, and the trial court, sitting as a jury, found: '' (1) that during the entire period for which plaintiff seeks recovery herein, the plaintiff followed the practice of leaving his house and the yard situated immediately around the house frequently for the purpose of taking rides, walking for recreation and visiting with friends at various places of business, but that all such activities were engaged in upon the advice of Dr. J. N. Compton, plaintiff's physician; (2) that the plaintiff did not engage in any remunerative work during the period for which he seeks recovery herein until

the year 1950 during which year he worked a few Saturdays but such work was irregular; that he worked between November 11, 1950 and December 30, 1950 and earned by reason thereof $180.00, and that since that time he has worked as an extra salesman; (3) that the plaintiff became ill of heart disease and that his heart condition will not substantially improve, and that plaintiff will never be able to resume full time work as a clothing salesman; (4) that the work which the plaintiff did was all done upon the advice of his physician."

The court points out that whether the insured was disabled within the meaning of the policy was a question for the jury and that Arkansas, along with about 27 other states, applies a "liberal" construction to policies of disability insurance, whereas other states have adopted the "literal" view. Here we cannot say there is no substantial evidence to sustain the jury's verdict that the insured was totally disabled within the first ten days following his injuries.

The next proposition is whether the insured gave notice of his disability according to the terms of the policy. The policy provides: (Paragraph (4) of Standard Provisions) "Written notice of injury or of sickness on which claim may be based must be given to the Association within twenty (20) days after the date of the accident causing such injury or within ten (10) days after the commencement of disability from such sickness. In event of accidental death immediate notice thereof must be given to the Association."

(Paragraph (5) of Standard Provisions) "* * * Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible."

As heretofore pointed out, the insured continued to try to work after he received the injury. He thought his trouble was merely a sprained back and that he

would improve, but his condition grew steadily worse, and he was compelled to go to the hospital in St. Louis. While there he sent the insurance company a notice of his disability. The notice stated that he had been injured while working as a brakeman on February 23rd and that he quit work on April 19th. Upon receipt of this notice, the insurance company sent him forms upon which to make his proof of disability. One side of the form was to be filled in by the insured and the other side by his attending physician. There was also a place for the employer to show loss of time. In the insured's statement on his proof of disability form, he says that his disability is due to a back injury he received while working as a brakeman on a train when the train collided with a truck. In his statement, the doctor gave a "Diagnosis of ILLNESS or nature of INJURY — Acute Tick Fever". Incidentally, an insect bite has been held to be an injury within the meaning of a policy of accident and health insurance. *Omberg* v. *U. S. Mut. Assn.*, 101 Ky. 303, 40 S. W. 909. The doctor stated, also, that there was a "Low Back Injury". The proof of loss was received by the insurance company June 3 (1955) and the insured was then paid for two months' disability. Thereafter in each statement the insured furnished the insurance company as proof of his disability, he said he was injured in the train wreck of February 23rd. On the 20th day of June, Frisco Employees' Hospital Association furnished a statement to the insurance company, giving a diagnosis of the cause of insured's disability as "Compression fracture, Old L-2-3. Old Herniated Disk, L-5". The insurance company continued to pay the insured $80.00 per month for six months. Payments were then discontinued on the theory that the insured's disability was due to tick fever, which condition the company claims is an illness.

The company contends that the insured cannot recover for the injuries he received on February 23rd because notice of such injuries was not given in accordance with the terms of the policy. True, the policy provides that the notice must be given within twenty days of the

time the injury was received, but the policy further provides that "Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that such notice was given as soon as was reasonably possible." The question is, did the insured give notice as soon as was reasonably possible to do so? It will be recalled that for about two months following his injury, he continued to try to work. He did not realize that he had a "compression fracture and herniated disk" in his spinal column, but just as soon as he discovered what was causing his disability he promptly notified the insurance company. Although the company claims to have been paying the insured because of tick fever, the insured had said from the time of the filing of the first notice of disability that his condition was due to injuries, and the hospital had given the insurance company notice on June 20th that the disability was due to "compression fracture and herniated disk". True, this report describes the fracture and ruptured disk as "old", but the report was dated June 20th, and the injuries had been received on February 23rd. There is no showing that "old" was intended to mean more than four months old.

In its contention that the insured failed to give notice of his injury in accordance with the terms of the policy, appellant relies heavily on the case of *Business Men's Assur. Co.* v. *Selvidge,* 187 Ark. 1040, 63 S. W. 2d 640. In that case the insured claimed to have lost an eye on the 12th day of August, 1932. Notice was not given to the insurance company until November 12, 1932. The court held that the late notice was due to the negligence of the insured and was not given as soon as reasonably possible. That case is easily distinguished from the case at bar. There the insured knew of the loss of his eye when it happened and it was three months later that he gave notice to the insurance company. Here the insured thought that he had a sprained back which would improve, and he continued to try to work. It was only when the condition did not improve and he was compelled to go to

a doctor that he discovered that he had a ruptured disk and fractured vertebra. Appellant also cites *Commercial Fire Ins. Co.* v. *Waldron,* 88 Ark. 120, 114 S. W. 210, but that case has no ''reasonably possible'' clause, and this was also the case in *Pacific Mutual Life Ins. Co.* v. *Butler,* 190 Ark. 282, 78 S. W. 2d 813.

The purpose of giving notice of a claim of disability is to furnish the insurance company an opportunity to investigate. *National Casualty Co.* v. *Johnson,* 226 Ark. 737, 293 S. W. 2d 703. In the case at bar when the insured notified the insurance company on June 3rd that he had been injured in a train wreck on February 23rd, the insurance company immediately began making payments to indemnify the insured for his disability, although the insurance company stated that they were paying him for tick fever, as had been reported by the doctor. The insured had given notice of his injuries and had furnished the information as to the time and place that he received the injuries and it will be recalled that on June 20th the hospital gave the insurance company notice that the insured was disabled due to a ruptured disk and a compression type fracture. Upon receipt of all this information the insurance company continued to pay the insured the full $80.00 per month for a six months period.

In *Pacific Mutual Life Ins. Co.* v. *Dupins,* 188 Ark. 450, 455, 66 S. W. 2d 284, there was a provision in the policy for giving notice, almost identical with the provision in the policy in the case at bar. There, on September 11th appellant notified the insurance company that he was suffering a total disability which began prior to July 15, 1931. The court said: ''The question as to whether or not appellee gave the notice as soon as was reasonably possible was submitted to the jury as a question of fact, and its findings in behalf of appellee should be sustained, if supported by substantial testimony. On this question appellee testified that he did not know that he had tuberculosis until immediately prior to the institution of this suit; that the

first information he had came from his physician at that time." Likewise, in the case at bar appellant did not know that he had a ruptured disk and fractured vertebra until he went to a doctor along about the middle of April, and upon learning what his injuries consisted of, he notified the insurance company. In these circumstances there was substantial evidence to support the jury finding that the insured gave notice of his disability as soon as reasonably possible.

The policy provides that no action at law or in equity shall be brought to recover on the policy prior to the expiration of sixty days after proof of loss has been filed. Appellant contends that at the time suit was filed, June 18, 1956, the insured had not notified the company of his disability beginning on February 23, 1955. On June 3, 1955, the insured gave notice that he had been injured in an accident on February 23rd. In response to this notice, the insurance company furnished him forms on which to make his proof of loss, and there the policyholder clearly states that he had a back injury as a result of a train wreck on the 23rd of February, and the doctor also gives the information that the insured has a "low back injury" and on June 20th the Hospital Association gave the insurance company information that the insured had a compression fracture and a herniated disk.

In *American Central Lf. Ins. Co.* v. *Palmer*, 193 Ark. 945, 104 S. W. 2d 200, the court held that the proof of disability is sufficient if it justifies the presumption of disability to an intelligent judgment, reasonably and fairly exercised. We think the case at bar fits that picture. Here the insured had been in a train wreck and it was determined that as a result thereof he had a ruptured disk and fractured vertebra. The insurance company furnished forms on which to make the proof of loss, accepted such proof, and made monthly payments to the insured. We do not believe the suit was filed prematurely.

Affirmed.