WALDEN v. AUTOMOBILE OWNERS SAFETY INSURANCE
COMPANY.

5-1497                                                311 S. W. 2d 780

Opinion delivered March 31, 1958.

[Rehearing denied April 28, 1958]

*McMath, Leatherman & Woods,* for appellant.

*Rose, Meek, House, Barron & Nash,* for appellee.

SAM ROBINSON, Associate Justice. This case involves the construction of a policy of accident insurance. The cause was submitted to the trial court on an agreed statement of facts detailing the testimony certain persons would give if called as witnesses. The stipulation provides: "Since there is no significant dispute as to the facts involved herein, the above case is being submitted on the testimony stipulated below for the decision . . . as to the applicable law." Mrs. Dan E. Walden, the beneficiary named in the policy, has appealed from a judgment in favor of the insurance company.

The insured, Dan E. Walden, a resident of Bauxite, was an employee of the United Steelworkers of America in the capacity of handling grievance matters for about 2,500 workers in the aluminum industry. Many of the employees worked at night, and 85 per cent of Walden's work was done after 7:00 p.m. On occasions

he worked all night. Mr. Herbert Jarrett is Area Labor Relations Director for Reynolds Metals Company. On the evening of February 28, 1956, Mr. Walden, Mr. Jarrett and Mr. Guy Bass, a Labor Union official, met in Little Rock to discuss business matters. The meeting lasted until about 1:00 a.m. of February 29th. At this meeting Walden agreed to a change in the date of another meeting previously arranged for the following Friday, although such change would work a hardship on him, the inference being that he would have to notify immediately other members of the Union about the change in date of the next meeting.

After the meeting between Walden, Jarrett and Bass in Little Rock, which ended about 1:00 a.m., Walden drove Bass to Benton, where they continued to discuss Union matters until about three or four o'clock in the morning, at which time Walden drove away in his car. The next day Walden's partly submerged automobile was found on a road leading down into an abandoned bauxite mining pit which had become flooded with water. The road on which the car traveled into the water was very steep at that point. The water was up to the top of the hood in front and almost to the bottom of the dashboard, but it was only up to the level of the hub caps on the rear wheels, and the rear bumper was extending over dry land. The gear shift was in reverse; the emergency brake had been set; and all the doors and windows were closed, except the window of the left front door. Walden's body was found in about 12 or 15 feet of water, 75 or 100 feet from the automobile. The car keys were found in his pocket. Water covered the area between the automobile and the body. An autopsy showed that Walden came to his death by drowning on the morning of February 29th. There were no bruises, wounds or injuries on his body.

The controversial clause in the policy of insurance provides: ". . . INSURANCE COMPANY . . . Does Hereby Insure DAN E. WALDEN . . . Against loss from accidental bodily injury sustained while driv-

ing or riding within any automobile, truck or bus for business or pleasure during the term of this policy, provided such bodily injuries are caused solely by reason of an automobile, truck or bus accident." The amount payable for loss of life is $2,000. Printed on the face of the policy in conspicuous lettering is "THIS IS A LIMITED POLICY — READ CAREFULLY".

We think the circumstantial evidence as outlined in the agreed statement of facts proves by a preponderance of the evidence that the insured accidentally drove his car into the water; that it was dark, and the insured suddenly found himself in water that came up into the seat of the car; that in an attempt to escape from his very hazardous predicament he went out the window of the car and was drowned. There is no substantial evidence to the contrary. That he got out of the car into the water and came to his death by drowning is conclusive. There is no indication of suicide, and the presumption is against it. The fact that he may have struggled 75 or 100 feet before he drowned is not material.

The insurance company contends that according to the undisputed testimony the insured was not injured while driving within an automobile. On the other hand, the beneficiary contends that she is entitled to recover although the insured was not injured inside the automobile but came to his death by drowning after he left the automobile, in the circumstances shown here.

Both sides have cited numerous cases having the same or similar policy provisions which they contend sustain their respective contentions. Some of the cited cases holding against recovery on the policies are: *Wertman* v. *Michigan Mut. Liability Co.*, 267 Mich. 508, 255 N. W. 418. There, the insured had a wreck, got out of the car to a place of safety, and a few minutes later went back to the car, where he was electrocuted. In *Eynon* v. *Continental Life Ins. Co. of Mo.*, 252 Mich. 279, 233 N. W. 228, the insured was injured while putting air in a tire. *Independence Ins. Co.* v. *Blanford's Adm'x.*, 276 Ky. 692, 125 S. W. 2d 249, turned on a question of fact. The court

held that the insured car went out of control and stopped 53 feet from a canal. Several months later the insured's body was found in the canal. It was badly decomposed and the cause of death could not be determined. In *Life & Casualty Ins. Co. of Tenn. v. DeArman,* 192 Ark. 11, 90 S. W. 2d 206, the policy provided that the insured must be riding inside an automobile at the time of injury. The policyholder was riding on the outside of a cattle truck at the time of the mishap.

*McDaniel v. Standard Acc. Ins. Co.,* 221 F. 2d 171, is closely in point. The policy insured Hollis McDaniel "from loss resulting directly and independently of all other causes from accidental bodily injuries" except "For death, disability or other loss resulting directly or indirectly from injury sustained by the Insured while in or on any aircraft or other device for air travel or in falling or otherwise descending therefrom or therewith or while operating or handling such aircraft or device, unless the Insured is riding as a fare-paying passenger in a licensed airplane or dirigible, operated by a licensed passenger carrier on a published schedule over a regular passenger route and between established airports." The insured was in a private airplane which made an emergency landing in Lake Portage. He attempted to swim ashore but drowned when he was within about 15 feet of the bank. The court held that the exclusion provision did not apply, but not a single case is cited in support of the decision. And in *Eschweiler v. General Acc. Fire & Life Assur. Corp.,* 241 F. 2d 101, the same court rendered a similar opinion, citing only the *McDaniel* case. *Johnson v. Federal Life Ins. Co.,* 60 N. D. 397, 234 N. W. 661, was a carbon monoxide poisoning case. There the decision was based on a literal construction of the policy. We have adopted the liberal view, as pointed out in *Benefit Ass'n of Ry. Employees v. France,* 228 Ark. 765, 310 S. W. 2d 225, in which we cited *Occidental Life Ins. Co. of Calif. v. Sammons,* 224 Ark. 31, 271 S. W. 2d 922.

We think the weight of authority supports the view that in the situation presented the beneficiary is

entitled to recover under the terms of the policy. In *Miller* v. *Inter-Ocean Casualty Co.*, 110 W. Va. 494, 158 S. E. 706, 76 A. L. R. 1308, the policy insured against loss while operating, driving, riding in or on an automobile. The automobile became stuck in the mud. Two passengers proceeded afoot, but Miller, the driver, stayed with the car, and the next day his lifeless body was found in the car. Death was due to carbon monoxide poisoning. The beneficiary was allowed to recover under the terms of the policy.

In *Dorsey* v. *Fidelity Union Casualty Co.*, Tex. Civ. App., 52 S. W. 2d 775, 776, the policy insured against loss or bodily injuries sustained only as a result of operating, driving, riding in or on an automobile. The policyholder was accidentally shot while he was sitting in an automobile, when a hunting companion, who was standing on the ground away from the automobile, accidentally discharged his gun. The court said: ". . . the insured is entitled to recover, if his injury was the result of operating or riding in the automobile, even though it was only a remote result thereof." In the case at bar the policy has the additional provision that the injuries must be caused solely by reason of an automobile, truck or bus accident. Here there was an accident — there was a collision of the automobile with the water, and in the case of *Washington Fire & Marine Ins. Co.* v. *Ryburn,* decided by this Court on March 24, 1958, 228 Ark. 930, 311 S. W. 2d 302, it was held that a collision with water in a ditch is within the terms of a policy of collision insurance which provided for loss or damage to the automobile caused by collision with another object.

In *Provident Life & Acc. Ins. Co.* v. *Nitsch,* 123 F. 2d 600, 601, the policy had a "while driving, riding in or on . . . an automobile" clause. The insured was accidentally shot while a pistol, along with some other articles, was being removed from the glove compartment after the insured had arrived home at the end of a journey and had stopped the automobile. In holding that recovery could be had under the policy, the court said: "Its (appellant's) final point that because

the automobile had come to a stop, the deceased was not, within the policy coverage, riding in it, is equally without merit.''

In Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 6, Pt. 2, § 4127, it is said: ''Yet if the insured, seeing that (a) collision is inevitable, jumps from (a) truck and is tripped or stumbles and falls in such a position as to pass beneath (the) train, the consequent injury may be said, within the terms of the policy, to have resulted from a collision while 'actually driving'.'' It is hard to see any distinction between jumping from an automobile to avoid being struck by a train, and in doing so being run over by the train, and leaving an automobile to keep from being drowned, and in doing so drowning outside the automobile.

In *Life & Casualty Ins. Co. of Tenn.* v. *Tollison*, 223 Ala. 78, 134 So. 805, 807, the driver of a truck, seeing a collision was inevitable, jumped and was injured by a train. The court held that the loss resulted from a collision while actually driving the truck. The court said: ''The same relation of insurer and insured obtained if he jumped to save himself, but nevertheless failed to save his limbs. The causal relation between the collision and the loss would be the same. We see no reason to disregard the positive testimony tending to show such was this case, *because of inability to definitely account for his position when or after his injury was received.*'' (Emphasis supplied) Likewise, in the case at bar recovery should not be denied merely because the corpse was found in the water 75 or 100 feet from the car.

And in *Wright* v. *Aetna Life Ins. Co.*, 10 F. 2d 281, 282, the court said: ''. . . the insured was riding down a mountain road of steep grade in the private automobile of a friend, who was driving. In the descent the driver, in attempting to change gear, for the time being lost control of the car. When he finally got it under control, he found the deceased had disappeared, and, going back, found him lying face down on the road. He was unconscious and so fatally

injured that death ensued the next day. No one saw how or when he left the car, and, other than the fact that when the car got out of control he was in it, and when control was regained he was not in it, everything was speculative. Did the policy cover such an accident? That the physical injury suffered by the deceased was inflicted when he struck the road, and not when he was in the car, is clear, and therefore, adhering to the literalism of its policy the company contends the deceased, when injured, was not 'riding in the car', and therefore, looking at the injury and accident as occurring at the instant his head struck the roadway the situation was one not covered by the policy. On the other hand, it is contended that the real accident was losing control of the car, and if the deceased was then riding in the car, and one of the natural and to be expected results of that lost control was that he might leave the car, then the policy covered the situation.'' In holding that the beneficiary should recover on the policy, the court said, by way of illustration (10 F. 2d 283) : ''If one were insured while 'riding in a motorboat', and circumstances arose where the steering gear ceased to control and the vessel was headed for a dam, rapid, or other vessel, and a frightened passenger jumped out to save himself, and thereafter succumbed and was drowned, while not riding in the motorboat, a reasonable man might contend that under such circumstances the passenger was covered by such policy, although actual death came from drowning. In the present case the real accident was not when Wright's head struck the road, but when car control was lost. Such lost car control was the critical accident time, and the dominating factor which subjected the riding passenger to present peril and later death.'' The same is true in the case at bar. The real accident was when Walden drove into the water in the mining pit, and that was the thing that subjected him to danger and brought about his death.

This view also is sustained by the cases of *Fox* v. *American Casualty Co.*, 49 Pa. Dist. & Co. R. 112; *Southern Surety Co.* v. *Davidson*, Tex. Civ. App., 280 S. W.

336; *Holgate* v. *Great Eastern Cas. & Ind. Co.*, 18 Pa. Dist. 426; *Fomby* v. *World Ins. Co. of Omaha*, 115 F. 2d 913.

Our c o n c l u s i o n is that Walden's death is covered by the policy, and the beneficiary should recover. The judgment is therefore reversed, and since the case was submitted on a stipulation of facts, judgment shall be entered for the plaintiff.

McFADDIN, J., dissents.

GEORGE ROSE SMITH, J., not participating.

ED. F. McFADDIN, Associate Justice, dissenting. This case was tried before the Circuit Judge without a jury; and the law is well established that in such a situation the findings of the Court have the force and effect of a jury verdict. It is true that the case was submitted on an agreed statement of facts; but, even so, certain inferences and conclusions had to be drawn from such facts; and it is the province of the jury (the Circuit Judge in this case) to draw such inferences and conclusions; and when so drawn these are binding.

The factual issue for determination was whether Mr. Walden died *directly* because of the collision of his car with the water, or whether he died by reason of an *intervening efficient cause*, i.e., the taking of the wrong direction when he left the car. The Trial Judge found the latter to be true. It was for the Trial Judge to draw the inferences and conclusions from the facts; and under our system we should affirm his findings. In reversing the Circuit Court judgment, this Court is saying, as a matter of law, that whenever a car goes into the water and the person leaving the car drowns, then the drowning is a part of the collision with the water, notwithstanding the fact that there might have been an intervening efficient cause.

In reversing the judgment of the Circuit Court the Supreme Court is sitting as an appellate jury in this case; and I think we should not so constitute ourselves.

Therefore, I respectfully dissent.