FOMBY v. WORLD INS. CO. OF
OMAHA, NEB. et al.
Civ. A. No. 500.

United States District Court
W. D. Arkansas, El Dorado Division.
Nov. 16, 1950.

914

Keith & Clegg, Magnolia, Ark., for plaintiff.

Mahony & Yocum, El Dorado, Ark., for defendants.

JOHN E. MILLER, District Judge.

### Statement

On December 13, 1949, the plaintiff filed her complaint in the Columbia Circuit Court, Second Division, and in due time the cause was removed from said court by defendant, World Insurance Company of Omaha, Nebraska.

The claim of plaintiff is based upon a policy of insurance, No. 800150, issued on or about February 28, 1949, by the defendant, World Insurance Company, insuring the employees of Columbia County, Arkansas, against loss of life, limb, sight or time from accidental injuries. The policy designates the defendant, Columbia County, Arkansas, as employer and as the beneficiary of the employees for the benefits therein provided.

The plaintiff's intestate, Robert Fomby, was killed on August 27, 1949, and the plaintiff alleges that at that time the policy was in full force and effect and that the death of the said Robert Fomby occurred through purely accidental means and that by reason of said death the plaintiff, as administratrix of the estate of the said Robert Fomby, deceased, is entitled to recover the sum of $3,000, together with a penalty of 12%

and a reasonable attorney's fee and all costs.

On December 27, 1949, the defendant, World Insurance Company, filed its answer in which it admits:

That the plaintiff is a citizen and resident of Columbia County, Arkansas, and that she is the duly qualified and acting administratrix of the estate of Robert Fomby, deceased; that the defendant, World Insurance Company, is a corporation organized and existing under and by virtue of the laws of the State of Nebraska and is authorized to transact business in the State of Arkansas; that it issued on or about February 28, 1949, a policy of insurance No. 800150, under the terms and provisions of which it insured the employees of Columbia County, Arkansas, against loss of life, limb, sight or time from accidental injuries as described in the policy, a true copy of which was attached to the complaint; that the policy was in full force and effect according to the terms and conditions thereof from February 28, 1949, to the date of filing of the complaint; that the plaintiff's intestate, Robert Fomby, was an employee of Columbia County at all times subsequent to the date of the policy and on the date of his death, August, 27, 1949, and was classified in the policy as a "Class B" employee; that the said insured, Robert Fomby, was killed on August 27, 1949, by falling beneath the wheels of a truck.

The defendant insurance company denies that due proof of loss was made and likewise denies that the contract of insurance with Columbia County was made for the benefit of the employee or his legal representative.

On May 2, 1950, the defendant, Columbia County, Arkansas, filed its answer in which it admits the allegations of the complaint and adopts the same as its own, and prays that it have judgment against the defendant insurance company on the claim for the use and benefit of the plaintiff, Esther Fomby, administratrix.

On May 3, 1950, the defendant insurance company filed a response to the

answer of the defendant, Columbia County, Arkansas, in which it alleged that the County did not have an insurable interest in the deceased, Robert Fomby, and denies that the insurance policy was issued for the benefit of the employee or his legal representative.

On May 27 the plaintiff filed a request for admissions under Rule 36 of the Federal Rules of Civil Procedure, 28 U.S.C.A., to which request the defendant, World Insurance Company, failed to formally respond. But the attorney for the defendant insurance company, in open court, admitted that the County Judge of Columbia County, Arkansas, on August 27, 1949, the date of the death of the said insured, advised S. V. Abraham, the authorized agent of the defendant insurance company, by telephone conversation of the accidental death on that date of the said insured, with sufficient particulars to identify the said Robert Fomby; that the insurance company failed to furnish at any time thereafter to Columbia County or to Esther Fomby, or, any other person, forms as are usually furnished by the defendant insurance company for filing proof of loss; that the said authorized agent of the defendant insurance company on August 28, 1949, secured written statements from residents of Columbia County relative to the occurrence, character and extent of the loss for which claim was made, and that demand was made upon the insurance company prior to November 27, 1949, by O. W. Taylor, County Judge of Columbia County, Arkansas, for payment of death benefits under the said policy.

On June 5, 1950, the defendant insurance company filed an amendment to its answer in which it alleges that the policy sued upon contains an endorsement providing that the policy covers injuries received during the time the employee is proceeding to or returning from the place of his employment only while riding in any transportation conveyance provided by the employer for that purpose. The defendant insurance company further alleged that, at the time the deceased sustained the injuries resulting in his death, he was not proceeding to the place of his employment and was not at that time riding in any transportation conveyance provided by the employer for the purpose of transporting the deceased to his place of employment, and that he was without authority or permission from his employer to ride the truck of the employer that he was attempting to ride at the time he received said injuries.

On June 5 the plaintiff, with the permission of the defendant, World Insurance Company, withdrew her request for a jury trial and the parties, by agreement, waived a jury trial, and the cause proceeded to trial to the court on June 13, 1950.

At the beginning of the trial, an order was entered aligning the defendant, Columbia County, Arkansas, as a party plaintiff.

During the trial the plaintiff offered testimony of a witness, Dewey Hall, that the deceased, Robert Fomby, a few minutes before his death, "told me he had to go to town to work on his machine and draw his check", and of the plaintiff, Esther Fomby, widow of the deceased, "that he was going to town to work on his truck". At the time the testimony was offered the court sustained the objection of the defendant to the introduction of such testimony, and at the conclusion of the plaintiffs' case, the record showed the offer of such testimony by plaintiffs and its exclusion by the court upon the objection of the defendant. The defendant then announced that it did not desire to introduce any testimony and orally moved for a judgment in its favor. The attorney for the defendant orally set forth the reasons for said motion. Thereupon, the court stated to the attorneys for the plaintiffs and the attorney for the defendant that the testimony objected to by defendant would be admitted in accordance with the decision of the Court of Appeals for the Eighth Circuit in the case of Builders Steel Co. v. Commissioner of Internal Revenue, 179 F.2d 377, 379. Accordingly, said testimony was again offered by the plaintiff and admitted over the objection of

the defendant. The defendant, through its attorney, stated that it still desired to stand on its motion for judgment and to have its objections to the admissibility noted of record, and that it did not desire to introduce any testimony.

The case was submitted to the court for its consideration and was under consideration when, on June 30, 1950, the Judge wrote the attorneys for the plaintiffs and the attorney for the defendant that while the admissibility of said testimony had not yet been determined by the court, it appeared that the attorney for the defendant might be laboring under a misapprehension as to the effect of the action of the court in first sustaining the objection to the offered testimony and then permitting the testimony to be introduced and overruling the objection of the defendant to its admission, and that in the interest of justice and in order that the case might be fully developed, the Judge suggested that if the attorney for the defendant desired, further consideration of the case would be deferred and he would be permitted to offer any testimony that he desired to offer at the next session of the court. The attorney for the defendant advised the Judge that he would like to have the privilege of offering testimony even though he was still of the opinion that the testimony offered by the plaintiff to which the defendant had objected was not admissible. Thereupon the court withdrew the case from further consideration and it was set for a further hearing October 23, 1950, at which time the defendant, over the objections of the plaintiffs, proceeded to introduce its testimony.

The respective attorneys have submitted written briefs and arguments in support of their various contentions, which briefs and arguments have been considered, and the court now makes and files herein its findings of fact and conclusions of law, separately stated.

### Findings of Fact

**1**

The plaintiff, Esther Fomby, is a citizen and resident of Columbia County, Arkansas, and the duly qualified and acting administratrix of the estate of Robert Fomby, deceased.

The defendant, World Insurance Company of Omaha, Nebraska, is a corporation organized and existing under and by virtue of the laws of the State of Nebraska and authorized to do business in the State of Arkansas.

The amount involved herein exceeds the sum of $3,000, exclusive of interest and costs.

**2**

On February 28, 1949, the defendant insurance company, in consideration of the payment of the premium therein stated, executed and delivered to the plaintiff, Columbia County, Arkansas, its policy of insurance No. 800150, of which a true and perfect copy is attached to the complaint.

**3**

The policy provides that the defendant insurance company insures the employees of Columbia County, Arkansas, "against loss of life, limb, sight or time, sustained or commencing while this policy is in force, resulting directly and independently of all other causes from bodily injuries sustained during any term of this policy, through purely accidental means (suicide, sane or insane, is not covered) while the employee is actually engaged in the performance of some duty pertaining to his occupation for which he is compensated by a wage paid by the employer."

Endorsed upon the policy is the following provision:

"This policy covers such injuries during the time the employee is proceeding to or returning from the place of his employment only while riding in any transportation conveyance provided by the employer for that purpose."

The policy contained the further endorsement providing:

"This is not compensation insurance and has no connection with the Arkansas Workmen's Compensation Law."

Columbia County, Arkansas, is named as the employer. The employees covered by the policy are divided into Class A and B. One employee was placed in Class A and 40 employees were placed in Class B. The deceased, Robert Fomby, was a Class B employee, and in the event of the accidental death of such an employee the amount of insurance was fixed at $3,000.

General provision No. 11 of the policy provides:

"All indemnities of this policy are payable to the employee or beneficiary of the employee."

The policy further provides that, in the event of accidental death, immediate notice thereof must be given to the company and that such notice may be given in behalf of the employee or employer to any authorized agent of the company, with particulars sufficient to identify the employee and that, in the event such notice is given, the same shall be deemed to be notice to the company. Upon receipt of such notice the company agreed to furnish such forms as are usually furnished for the filing of proofs of loss and, in the event such forms are not furnished within fifteen days from the receipt of such notice, the claimant shall be deemed to have complied with the requirements of the policy as to proof of loss upon submitting, within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made.

In Paragraph C of the "Additional Provisions", it is provided that the beneficiary of the employee for all benefits provided shall be the employer.

### 4

The insured, Robert Fomby, died August 27, 1949, and on that date the County Judge of Columbia County, by telephone conversation advised S. V. Abraham, an authorized agent of the defendant insurance company, of the accidental death on that date of the insured, Robert Fomby, with particulars sufficient to identify the said Robert Fomby. On the next day, August 28, 1949, the said agent of the defendant company secured written statements from residents of Columbia County, Arkansas, covering the occurrence, character and extent of the loss for which claim is made. Written demand was made upon the defendant insurance company by O. W. Taylor, County Judge of Columbia County, prior to November 27, 1949, for payment of death benefits under the policy sued upon, and payment was refused by the defendant company.

### 5

The insured, Robert Fomby, at the time of his death had been an employee of Columbia County for three or four years. He had a large family consisting of a wife and eight children, and the sole support for said family was earned by him through his employment by Columbia County, Arkansas. He had worked five days of the week preceding his death on Saturday, August 27, but did not report to the shop or County headquarters for work on Saturday morning, August 27. Instead, he and some neighbors went to a cemetery located near his home approximately 7½ miles from Magnolia, the county site of Columbia County, Arkansas, where they dug a grave for the interment of a neighbor. They finished their work of digging the grave about 10 o'clock a. m. and the deceased and a neighbor, Dewey Hall, returned from the cemetery to the home of the deceased, Robert Fomby, about 10:30 a. m. Upon their return to the home of Fomby, they obtained a drink of water and shortly thereafter Fomby, without changing his work clothes, endeavored to obtain a ride on a county gravel truck to Magnolia, Arkansas.

It was the custom of the county to furnish transportation from the home of the employees to the place of work. The employees were usually conveyed in pickup trucks or any other conveyance operated by the county that might be convenient to the home of the employee and which went to the headquarters or other place of employment. Fomby was em-

ployed as a patrol operator. The patrol was a motor machine operated by one man or, otherwise expressed, it was a one-man road grader. On Friday afternoon, the day before his death, when he had finished his work, he left the machine at the county headquarters where it would remain until the next morning and, ordinarily, Fomby would have reported the next morning, Saturday, August 27, to the headquarters where he would obtain the machine and enter upon his duties. The usual working time on Saturday was from 7 a. m. to 1 p. m., and if an employee did not intend to report for work on a particular day, the custom was to obtain permission to not report from either the County Judge or Mr. Everett, the foreman in charge of the employees in the absence of the County Judge. Fomby did not obtain permission to not report for work at the headquarters on Saturday morning, August 27, and, as above stated, was attempting to enter a gravel truck owned by the county and operated by a county employee at the time he received the fatal injuries.

### 6

The employees were paid monthly on any day after the 20th of the month, but they had not been paid for the preceding month on August 27, the date of the death of the insured.

### 7

After Fomby had obtained a drink of water upon his return from the cemetery, gravel trucks of Columbia County were passing his home going to the headquarters at Magnolia and he left his home and hailed or stopped one of the trucks for the purpose of riding the truck to the headquarters at Magnolia. The driver of the truck stopped for the purpose of permitting Fomby to enter the same when another gravel truck of Columbia County, immediately following the truck that Fomby was attempting to enter, crashed into the rear of said truck and threw Fomby therefrom and to the roadway and the wheels of the truck that he was attempting to enter passed over his body and inflicted injuries from which he died almost instantly. There was an automobile driven by an acquaintance of Fomby immediately preceding the gravel truck which he hailed, and Fomby signalled to the driver of the automobile, who apparently indicated that he would stop and pick him up, that he would use the gravel truck to carry him to Magnolia and to the headquarters of the employees.

### 8

It was the duty of the operator of a patrol machine such as had been assigned to Fomby and which he had been operating during his employment to make all minor repairs and adjustments and to keep the machine lubricated and in good running condition. In order to do this certain employees, including Fomby, often worked on Saturday afternoon if the condition of the machine required it.

### 9

Immediately before leaving his home to catch the gravel truck to Magnolia and to the headquarters, Fomby advised his wife, the plaintiff Esther Fomby, and also his neighbor, Dewey Hall, that he intended to go to the headquarters and report for work during the remainder of the day and that he expected to do some work on the patrol machine and at the same time obtain his check for whatever might be due him for the work performed during the preceding pay period. (The testimony establishing the facts set forth in this paragraph was strenuously objected to by the defendant, but was admitted by the court with the statement that, if the court concluded it was not admissible, it would be excluded.)

### 10

Employees, including Fomby, were permitted to work overtime on Saturday afternoons and were paid for the same if they did work of value to Columbia County. Fomby, as well as others, often did such work on the county equipment and always received pay therefor.

Fomby had been ill and had lost considerable time from his work, and as heretofore stated, the support of his large family was derived solely from his.

labor, and he often worked overtime in an effort to meet the obligations resting on him to support his family.

### 11

H. L. Crisp, a witness introduced by the defendant, testified that Fomby told him on Friday afternoon before the morning on which he was killed that he, Fomby, did not intend to work the next day, Saturday, but that he did intend to obtain his check on that date for the work he had performed during the month.

This witness was very reluctant and his manner on the witness stand did not impress the court. In fact, he testified that he did not remember whether the accident occurred in hot or cold weather and it was evident that he remembered very little, if anything, about what might have occurred prior to the date on which Fomby was killed.

### 12

Grady Johnson, a witness introduced by defendant, is a farmer living about five miles west of Magnolia and about two miles from the then home of Fomby. He assisted Mr. Fomby and others on the day of the accident in the digging of a grave for the interment of a neighbor of Fomby, and testified that Fomby told him while digging the grave that he was to be a pall bearer at the funeral that afternoon, which was to be held at 3 o'clock, but that he intended to go to Magnolia to obtain his check. This witness did not go to Fomby's home after his death and manifested no interest whatsoever in the accident, but his testimony is not in conflict with that of the witness, Dewey Hall, or the plaintiff, Mrs. Fomby, since Fomby could have made the trip to Magnolia after the completion of the grave and worked two or three hours on the machine and also obtained his check and returned to the funeral in time to act as a pall bearer.

(The plaintiff objected to that part of the testimony of these two witnesses, H. L. Crisp and Grady Johnson, wherein they testified to statements made to them by Fomby, but the testimony was admitted subject to further consideration by the court.)

### 13

Lester Everett, the road foreman for Columbia County, testified that transportation for County employees was usually furnished by pick-up trucks operated by the county, but that other kinds of trucks, such as gravel trucks, were sometimes used by employees when convenient to do so; that employees did not ordinarily work on Saturday afternoon except on instructions from him or the County Judge; that he had not given Fomby any specific instructions relative to working on the day on which he was killed; that at that time the usual Saturday hours were from 7 a. m. to 1 p. m., but if Fomby had in fact worked on that date either on the machine or elsewhere he would have been paid for such work even though he had worked after 1 p. m.; that on that date gravel trucks of Columbia County were hauling gravel from a point west of the home of Fomby and were passing by the home of Fomby on their trip through Magnolia to a point east of Magnolia where the gravel was being delivered; and that ordinarily Fomby or any other employee could have utilized without objection any one of such trucks to convey them to the headquarters at Magnolia.

### 14

The amount due under the policy is $3,000 and payment has been refused after due demand therefor.

### Discussion

Before proceeding to a discussion of whether the defendant, under the facts, is liable on the policy, it is necessary to consider other questions raised by the defendant.

■ Defendant contends that the plaintiff, Esther Fomby, administratrix, cannot enforce the insurance contract as a third-party beneficiary, because there was no privity between the promisee, Columbia County, and the third-party beneficiary; and that the policy is void and cannot be enforced by the named

beneficiary in the policy, Columbia County, because the latter did not have an insurable interest in the life of the deceased, Robert Fomby.

The insurance policy falls within that category of insurance known as "Group Insurance" and provides benefits for loss of life, limb, sight or time resulting from occupational injuries. It is undisputed that the deceased, Robert Fomby, was within the policy classification of "Class B" employees, and that the specified death benefit is $3,000. The provisions of the policy pertinent hereto are as follows:

"Hereby insures the employees of the individual, firm or corporation (hereinafter called the employer) named in the following schedule of insurance against loss of life, limb, sight or time, sustained or commencing while this policy is in force, resulting directly and independently of all other causes from bodily injuries sustained during any term of this policy, through purely accidental means (suicide, sane or insane, is not covered), while the Employee is actually engaged in the performance of some duty pertaining to his occupation for which he is compensated by a wage paid by the Employer, hereinafter called such injury, subject however, to all the provisions and limitations hereinafter contained."

An endorsement on the policy reads:

"This policy covers such injuries during the time the Employee is proceeding to or returning from the place of his employment only while riding in any transportation conveyance provided by the Employer for that purpose."

General Provisions No. 11 provides:

"All indemnities of this policy are payable to the Employee or beneficiary of the Employee."

And, Additional Provisions (c) provides:

"The beneficiary of the Employee, for all benefits provided herein, shall be the Employer."

Group insurance has been described as follows, 55 A.L.R. 1245, page 1246:

"The group insurance contract is peculiar in that it is made by the insurer and the employer, instead of between the insurer and the insured, as in other contracts of insurance, thus affecting four parties,—the insurer, the employer, the insured, and the beneficiary."

Referring to the contention of defendant that Esther Fomby, administratrix, cannot enforce the insurance contract, it should be noted that some of the earlier Arkansas cases (the parties raise no question as to the applicability of the Arkansas law) did require (1) an intent by the promisee to secure some benefit to the third party, and (2) some privity between the two, "privity" apparently being some obligation or duty owing from the promisee to the third party which would give the third party a legal or equitable claim to the benefit of the promisee. Thomas Mfg. Co. v. Prather, 65 Ark. 27, 44 S.W. 218; Dickinson v. McCoppin, 121 Ark. 414, 181 S.W. 151. An intent by the promisee to secure some benefit to the third party must appear as a prerequisite to suit by the third party against the promisor, for a mere incidental beneficiary is not entitled to maintain such a suit, but the law in Arkansas, at present, is in accord with the majority view that a donee beneficiary can maintain a suit on the promise for his benefit, and it is not necessary that "privity" exist, as was the case formerly. The Supreme Court of Arkansas stated in Freer v. J. G. Putman Funeral Home, Inc., 195 Ark. 307, 311, 111 S.W.2d 463, 465;

"We are confronted with the argument that formerly the courts held that there must have been some privity or obligation as between Finney and the appellee in order to bind appellant; that none being shown here that the appellee is without

remedy. We find that formerly under some of the more ancient authorities that proposition might have been deemed as well considered. We prefer, however, to take a different view, which we think is more consonant with absolute justice, as well as in conformity with the contract."

See, also: Lee Wilson & Co. v. Fleming, 203 Ark. 417, 156 S.W.2d 893; Restatement of Contracts, 1932, Sec. 133–136.

Certainly, it was the intention of the promisee, Columbia County, to make a gift to or confer a right upon its employee, Robert Fomby, or his estate, against the promisor, defendant World Insurance Company. The sole purpose of the insurance was to protect the employees and their families against a financial crisis resulting from occupational injuries, and the only logical inference from the issuance of this insurance policy is that both parties so understood that purpose.

Under the law of Arkansas, the plaintiff, Esther Fomby, administratrix of the estate of Robert Fomby, may enforce the promise of the defendant in the insurance contract as a donee beneficiary and real party in interest under said contract, provided, of course, the facts establish liability under the policy.

Referring to the second contention of the defendant, under the Arkansas law, an insurable interest in the subject matter of an insurance contract at the inception thereof is necessary to its validity. Mutual Aid Union v. White, 166 Ark. 467, 267 S.W. 137; 29 Am.Jur., Insurance, Sec. 318. And, it seems to be the better view that there must be a reasonable expectation of pecuniary benefit or advantage from the continued life of an employee for an insurable interest on the part of an employer in the life of an employee to exist. See: Annotation, 125 A.L.R. 408; 29 Am.Jur., Insurance, Sec. 365. However, these principles are not applicable to this case, because the real beneficiary under the policy is not Columbia County but the estate of Rob-

ert Fomby. None of the benefits were intended to and none will enure to the plaintiff, Columbia County. The reasons of public policy for voiding wagering contracts on the life of another do not exist here, and, therefore, it is immaterial whether the plaintiff, Columbia County, had an insurable interest in the life of Fomby. Without question the deceased, Robert Fomby, had an insurable interest in his own life, as did his wife and children, and they are the real beneficiaries in this case.

Apparently, the provision that the beneficiary of the employee would be the employer was inserted for the convenience of the defendant insurer so as to enable it to discharge itself from liability by paying the employer, and thereby avoid complications as to whom the money should be paid that might otherwise arise on the death of the employee. But, regardless of the reason for that provision, it was the intention of Columbia County that the benefits should enure to the estate of a deceased employee, and this was necessarily understood by the insurer, World Insurance Company. Since plaintiff, Columbia County, paid the premiums, the promise of the defendant, made in consideration for such payments, created a duty on the part of the defendant to execute its promise by paying the benefits, and the breach of that duty entitles plaintiff, Columbia County, to bring suit therefor. See: Rule 17(a), Federal Rules of Civil Procedure, 28 U.S.C.A. But, while named as beneficiary in the policy and, as stated above, entitled to enforce the obligations thereof, Columbia County occupies the position of trustee for the benefit of Fomby's estate as to the proceeds of any recovery on the policy.

In accordance with the above, the contentions of the defendant pertaining to the right of Columbia County and Esther Fomby to enforce the insurance contract are without merit. Both have joined as plaintiffs in this case, and any recovery will ultimately enure to the benefit of the estate of Robert Fomby, deceased.

During the trial, testimony of various witnesses was offered by both parties as to statements made by Robert Fomby of what he intended to do in Magnolia on the day of his death. All such testimony was objected to by the opposing party, but was admitted by the court subject to further consideration. As to this practice, the Court of Appeals for the Eighth Circuit, Builders Steel Co. v. Commissioner of Internal Revenue, 179 F.2d 377, 379, has stated:

> "In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made."

If all evidence of doubtful admissibility is in the record the Court of Appeals can ordinarily dispose of a case on appeal one way or the other, whereas if evidence deemed admissible by it has been excluded by the trial court a new trial cannot be avoided. Builders Steel Co. v. Commissioner of Internal Revenue, supra. In the final analysis, in a nonjury case questioned testimony becomes important when it is the basis of a finding of fact essential to a conclusion of law. If there is other competent testimony sufficient to establish the finding of fact or if there are other facts sufficient to support the conclusion of law, then the action of the trial court in admitting the questioned testimony is not prejudicial and could not serve as grounds for a reversal.

The court has found that the deceased, Robert Fomby, was on his way to Magnolia to work on his road machine at the time of the accident causing his death, and in making that finding has considered the statements of the deceased to his wife and to Dewey Hall made shortly before his departure, and, therefore, feels that in fairness to the parties that it should state its reasons for concluding that this testimony is admissible. This testimony was offered by the plaintiffs. The testimony offered by the defendant, which was objected to by plaintiffs, will be discussed subsequently.

■ Rule 43(a), Federal Rules of Civil Procedure, provides, inter alia:

> "All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held."

This rule is one of admissibility, rather than exclusion, with the evidence coming in under whichever one of the alternatives is favorable to its reception. Wright v. Wilson, 3 Cir., 154 F.2d 616, 170 A.L.R. 1237. The comprehensive scope of the rule is designed to enable the fact finder to get at the truth, and in achieving this end it is desirable that all evidence which is relevant and material be placed before the court for such credit and weight as the judge finds it is entitled.

In order to recover, plaintiffs must establish facts from which the conclusion of law may be drawn that the deceased was acting within the scope of his employment when killed, or in the language of the policy "actually engaged in the performance of some duty pertaining to his occupation for which he is compensated by a wage paid by the Employer." In this regard, injuries received while proceeding to and from work are within the policy coverage subject to the conditions of the policy endorsement, hereinbefore set forth, that they be incurred "only while riding in any transportation conveyance provided by the Employer for that purpose."

Thus, plaintiffs must establish that Robert Fomby was on his way to Magnolia to engage in the performance of his duties as an employee of the County. To establish this fact plaintiffs offered certain circumstantial evidence and the declarations of the deceased, made immediately before his departure, as to his intention in making the trip. It is obvious, therefore, that such declarations are relevant and material, and should be considered by the court unless inadmissible under all three alternatives of Rule 43(a).

It is pointed out by Dean Robert A. Leflar in his article, Theory of Evidential Admissibility—Statements Made out of Court, Vol. 2, Arkansas Law Review, page 26, at page 37, that:

"Most of the learning concerning the Hearsay Rule in the lawbooks today relates to the exceptions to the Rule rather than to the rule itself, and it is probable that with the constantly expanding list of exceptions there is more hearsay evidence today that is admissible under the exceptions than is subject to exclusion under the Rule.

"All writers on Evidence have discovered two common features of all Hearsay Rule exceptions. One of these is that there is some special greater-than-average necessity for admitting the particular type of hearsay evidence, it being particularly important that it be admitted because other equivalent evidence is normally unavailable and the person making the extrajudicial statement cannot be produced in court because he is dead or otherwise unavailable. The other common feature of the exceptions is some special greater-than-average reliability in the evidence covered by the exception, such as that the extrajudicial statement had been made under oath or other circumstances of particular solemnity, or at a time and in a situation when the maker

thereof, or declarant, had no motive for falsification but rather had unusual reasons for telling the truth."

This testimony meets both standards, since there is no other equivalent evidence available; at the time the statements were made the deceased certainly had no reason to anticipate his death and, therefore, the value of the statements in connection therewith; had no reason to falsify; and all of the facts and circumstances are entirely consistent with the declared intention.

The general rule appears to be that statements of a person since deceased with reference to the purpose of destination of a trip or journey that he was about to make are admissible. There are various theories of admissibility, among which are (1) Res gestae, (2) Verbal acts, and (3) Exception to the Hearsay Rule allowing proof of intention. Annotation, 113 A.L.R. page 268.

Support is found in the Arkansas cases for the admissibility of such statements under the "res gestae" theory. In Sullivan v. State, 171 Ark. 768, 775, 286 S.W. 939, 942, the court said:

"In the above case [Spivey and Lynch v. State, 114 Ark. 267, at pages 275, 276, 169 S.W. 949, at pages 951, 952] we cited cases holding 'that statements of one starting on a journey as to where he came from and where he was going, are ordinarily admissible in evidence as a part of the res gestae,' and we said * * *, under the cases relied upon by the Attorney General: 'It was permissible to prove the declarations of the deceased to the effect that he was going to the home of the defendant Lillie D. Lynch, to visit her.' "

For a case from the United States Supreme Court holding such statements admissible see Mutual Life Ins. Co. of New York v. Hillmon, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706. For cases from various jurisdictions see the annotation in 113 A.L.R. page 268, supra.

Without further discussion, suffice it to say that there is ample authority for the reception of this testimony. As to the authorities cited by the defendant, the court feels, without discussing the decisions in detail, that they are not controlling. These statements and the circumstances surrounding them adequately demonstrate that they were not made in bad faith and are not self-serving in the sense that self-serving statements are rejected. And, whether all of the requirements of res gestae are rigidly adhered to when such statements as in the present case are admitted under that theory is, in the opinion of the court, immaterial, for that doctrine is in reality simply used as a matter of convenience to receive evidence that is relevant and material and which should be received but otherwise might be rejected as being hearsay. Perhaps the better reasoning calls for its reception under the intention exception, but again, this is unimportant other than from an academic point of view, because, as pointed out above, there is sufficient authority for receiving and considering the evidence, and the court so rules.

The defendant presented testimony of statements made by the deceased the day before and the morning of his death. It argues that such statements are admissible as being declarations against interest. Plaintiffs, on the other hand, contend that the statements do not qualify as such, since they were not against a present, obvious pecuniary or proprietary interest. While too remote to be considered a part of the res gestae, perhaps these statements could be admitted as declarations of intention, subject to an examination of their remoteness as bearing on relevancy and materiality. However, the court does not deem it necessary to explore or determine the question, because in order to avoid any possible error affecting the substantial rights of the defendant it has considered this testimony and finds no irreconcilable conflict between these statements and those made immediately prior to his departure. As to the statement made the day before that he was not going to work but was merely going to town to pick up his check, it is entirely probable that he changed his mind in the meantime, and as to the statement made at the cemetery that morning that he was going to pick up his check, such statement is entirely consistent with those made later, that he was going to work and pick up his check. In any event, the court accepts the statements made immediately before his departure as the final and true statements of his intention in making the trip to town.

The court concludes from all of the evidence that the deceased, Robert Fomby, was on his way to Magnolia to perform duties pertaining to his occupation as a County employee.

This leaves two questions for determination: (1) whether the gravel truck was "any transportation conveyance provided by the Employer for that purpose"; and (2) whether Fomby was "riding in" such transportation conveyance at the time of his death.

It is settled beyond dispute that any ambiguous language in the insurance policy is to be construed most favorably to the insured and against the insurer, and "in all proper cases the language of insurance contracts should be so construed as to fix liability for injuries arising from accidents." Neither can the court distort the plain and obvious English in which a contract is written, but must construe words and phrases by their meaning as used in the ordinary speech of the people. Life & Casualty Insurance Co. of Tennessee v. De Arman, 192 Ark. 11, 90 S.W.2d 206.

As appears in the findings of fact, pickup trucks were furnished for the transportation of employees to and from work, but County gravel trucks were also utilized for the same purpose, and this use was known to and approved by the employer, Columbia County. The policy does not say any conveyance used exclusively for transporting employees

nor does it say any conveyance used primarily for that purpose. In the opinion of the court, the only reasonable conclusion to be reached when the language of the policy is given its usual and common meaning is that such a gravel truck was "any transportation conveyance provided by the Employer", and obviously, the same conclusion is reached under the favored construction to the insured if the language can be considered ambiguous.

The same principles of construction are applicable to the policy language "riding in" the conveyance. Numerous decisions from various jurisdictions might be referred to construing similar language in insurance policies. See: Annotation, 138 A.L.R. page 404. But, in the final analysis it is the duty of the court to give a common sense interpretation to the language of the particular insurance policy involved, and when the common meaning of "riding in" is applied to the facts in this case, the court is convinced that Robert Fomby was "riding in" the conveyance at the time of his death. The act of entering a conveyance preparatory to being transported to work is an essential step of the transportation, and the only reasonable conclusion is that such was within the intention of the parties in using the language "riding in". Had the defendant desired any other construction, it could have inserted language so explicit as to remove any doubt. See: Life & Casualty Insurance Co. of Tennessee v. De Arman, supra.

It is the conclusion of the court that the deceased, Robert Fomby, was killed while "riding in any transportation conveyance" provided by Columbia County and while performing a duty pertaining to his occupation, and, therefore, plaintiffs are entitled to recover under the policy.

## Conclusions of Law

### 1

The court has jurisdiction of the parties and of the subject matter of this cause.

### 2

The contract of insurance involved herein was in full force and effect at the time of the death of Robert Fomby, and may be enforced by the plaintiff, Columbia County, Arkansas, as the named beneficiary, and by the plaintiff, Esther Fomby, administratrix of the estate of Robert Fomby, as third party beneficiary and as the real party in interest.

### 3

Robert Fomby, the insured under the said policy, was killed "while riding in any transportation conveyance" provided by his employer, Columbia County, Arkansas, and while performing a duty pertaining to his occupation. Therefore, the death of Robert Fomby was within the policy coverage, and the defendant is liable under the policy to the extent of the specified death benefit, $3,000, plus the statutory penalty of 12%, or $360, and a reasonable attorney's fee, which the court fixes at $600, to be taxed as costs.

### 4

Any sum paid by the defendant, World Insurance Company, to Columbia County, Arkansas, in satisfaction of the judgment, shall be forthwith delivered by the said Columbia County to the plaintiff, Esther Fomby, as administratrix of the estate of Robert Fomby, deceased, and upon full payment of said judgment the same shall be satisfied of record by the said administratrix and the then County Judge of Columbia County, Arkansas.

### 5

Judgment in accordance with the above is being entered today and all costs assessed against the defendant.